**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SUPERIOR FIBERS LLC,** | : | |
| | : | |
| | : | **Case No. 2:16-cv-00472** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | **Magistrate Judge Deavers** |
| **MATTHEW W. SHAFFER,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on two motions: Plaintiff's Motion to Remand and Demand for Attorney's Fees (Doc. 6), and Defendant's Motion for Judgment on the Pleadings. (Doc. 3.) For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand and Demand for Attorney's Fees, and **DENIES** Defendant's Motion for Judgment on the Pleadings.

## I.    BACKGROUND

This case arises from the alleged misuse of Plaintiff's trade secrets by a former employee. Plaintiff alleges that Defendant breached a confidentiality agreement by sharing Plaintiff's confidential information with Defendant's new employer. Plaintiff seeks: (1) an injunction requiring, generally, that Defendant return all such confidential information to Plaintiff, refrain from using it, and identify people and entities with whom Defendant has shared it; (2) a declaration that, among other things, Plaintiff's information is proprietary and that Defendant had (and has) no right to take it; and (3) damages for Defendant's alleged breach of the confidentiality agreement.

1

## A. **Factual Background**

Superior Fibers, Inc., a predecessor company to Plaintiff Superior Fibers, LLC, hired Mr.

Shaffer in early 1994 to work in its Bremen, Ohio plant. (Doc. 11 at ¶¶ 4-6, 10.)  When Superior

Fibers, LLC ("Superior Fibers") took over the business in 2006, it fired and then re-hired Mr.

Shaffer. (*Id.* at ¶¶ 7-8.)  Shortly after Mr. Shaffer's re-hire, he executed an Employee Invention

Assignment, Confidentiality, and Restrictive Covenant Agreement ("Agreement"). (*Id.* at ¶ 9.)

The Agreement, which is attached to the complaint, contains both confidentiality and

noncompetition provisions.  In the confidentiality provision, Mr. Shaffer agreed not to "either

voluntarily or involuntarily, at any time during or after his employment with Employer [Superior

Fibers], disclose in any manner, or use for or on behalf of anyone except Employer, Confidential

Information of Employer." (Agmt. ¶ 3.1.)  He further agreed not to "copy or record or allow to

be copied or recorded any Confidential Information for any purpose other than for use by or on

behalf of Employer," (*id.*), and to "return to Employer at the time of the termination of his

employment…all Employer property in his possession, custody or control, including but not

limited to, Confidential Information." (*Id.* at ¶ 3.2.)  The Agreement defined "Confidential

Information" to include:

> any information of or regarding Employee, in any form, which is not known
> outside of Employer or which Employer compiled or collected at substantial
> expense and effort.  Such information includes, but is not limited to, in its
> broadest terms: (i) Employer methods of operation and processes, (ii) information
> regarding the nature and type of services rendered and/or products or processes
> sold by Employer, (iii) information regarding Employer's present and/or future
> products, processes, and systems including patent disclosures and patent
> applications, (iv) names of Employer's current, prospective, or former suppliers
> and customers, …and (xii) any item that constitutes Work Product of the
> Employer.

(*Id.* at ¶ 3.3.)  Work Product comprises "[a]ll inventions, discoveries, intellectual property of any

kind, items treated by Employer as proprietary and/or improvements that relate to the business of

Employer or "Conflicting Products" (as defined below) which Employee conceives, develops, or reduces to practice, alone or with others, during or within a one-year period after Employee's employment with Employer[.]" (*Id.* ¶ 2.1.)

The noncompetition provision of the Agreement restricted Mr. Shaffer from conducting a variety of activities during his employment with Superior Fibers, and for twelve (12) months thereafter. These activities included:

> ...aid[ing]...anyone...in soliciting or calling upon, contracting with, selling to or servicing, with respect to Work Product or Conflicting Products: (i) any Employer customer... (*id.* at ¶ 4.1);
>
> ...participat[ing] in the development, service or support of Work Product or Conflicting Products, in any geographic area(s) in which Employer markets and sells its products, processes or services (*id.* at ¶ 4.2);
>
> ...hold[ing] any interest in or engag[ing] in an executive, management or consulting capacity with respect to any person or entity that manufactures, distributes, or sells Conflicting Products in the same geographic area(s) in which Employer distributes and sells products, processes or services. (*Id.* at ¶ 4.3.)

The Agreement defines "Conflicting Products" to mean "'composites' or filtration products in its broadest terms of any nature and/or products, processes, or services sold, licensed or offered to be sold by, or in the development at, Employer." (*Id.* at ¶ 4.5.)

In 2013, Superior Fibers began to shut down its Bremen, Ohio plant, and Mr. Shaffer resigned from Superior Fibers on March 1, 2014. (*Id.* at ¶¶ 10-11.) Following his resignation, Mr. Shaffer went to work for a direct competitor of Plaintiff's, Pronamic Industries, LLC, where he stayed until approximately April 30, 2015. (*Id.* at ¶¶ 12-14.) On or about May 1, 2015, Mr. Shaffer took a new job at American Air Filter Company, Inc., *d/b/a* AAF International ("AAF"). (*Id.* at ¶ 15.) AAF is another direct competitor of Superior Fibers, but at the time it hired Mr. Shaffer, AAF "lacked the ... ability to produce the products that were being designed, manufactured and produced by Superior." (*Id.* at ¶¶ 16-17.)

3

Shortly after AAF employed Mr. Shaffer, Superior Fibers called AAF to advise it of the confidentiality provision of the Agreement that Shaffer had signed while employed with Superior Fibers. (*Id.* at ¶ 18.) During that communication, Superior Fibers informed AAF that Mr. Shaffer was prohibited from sharing with AAF Superior Fibers' "proprietary information, confidential information, intellectual property and/or trade secrets" ("Superior Fibers Information"). (*Id.* at ¶¶ 3, 19.) AAF responded that Mr. Shaffer "had never informed AAF about his Confidentiality Agreement." (*Id.* at ¶ 20.) In May and June of 2015, Superior Fibers attempted to contact AAF's general counsel to discuss the confidentiality provision of the Agreement, to no response. (*Id.* at ¶ 21-22.)

While employed with Superior Fibers, Mr. Shaffer learned about the "design, manufacturing and production requirements" for a Superior Fibers product, scrim-backed 10 gram ("10 gram"). (*Id.* at ¶ 23.) Producing 10 gram "with the scrim already attached thereto, inline, through the use of an oven[,]" as Superior did, required "Superior's intellectual property and trade secrets[.]" (*Id.* at ¶ 24.) Mr. Shaffer was also familiar with the Superior Fibers Information necessary to create products for Superior Fibers customers Chemco Manufacturing Co., Inc. ("Chemco"), Protect Plus Air Holdings, LLC ("Protect Plus"), Glasfloss Industries Ohio, LLC ("Glasfloss"), Clarcor Air Filtration Products, Inc. ("Clarcor"), and Dafco Filtration Group ("Dafco"). (*Id.* at ¶¶ 36, 45, 54, 63, 72.) When Mr. Shaffer left his employment with Superior Fibers, he "took his hard copies and/or electronic files containing Superior [Fibers] Information without Superior [Fibers'] permission or knowledge." (*Id.* at ¶ 82.)

Before Mr. Shaffer started with AAF, AAF did not know how to produce 10 gram "with the scrim already attached thereto, inline, through the use of an oven." (*Id.* at ¶ 25.) AAF used to buy $2,000,000 of 10 gram annually from Superior Fibers. (*Id.* at ¶ 28.) Now, as a result of

4

Mr. Shaffer improperly sharing Superior Fibers Information with AAF, AAF *can* produce 10 gram using Superior Fibers' methods, and AAF no longer buys 10 gram from Superior Fibers. (*Id.* at ¶ 31.) In fact, 10 gram is now AAF's highest-volume product, valued at approximately $5,000,000 per year. (*Id.* at ¶¶ 26-27.)

Mr. Shaffer did not just help AAF produce 10 gram, however. Once Mr. Shaffer started working for AAF, AAF began using Superior Fibers Information to sell products it had never sold before to Superior Fibers customers Chemco, Product Plus, Glasfloss, Clarcor, and Dafco. (*Id.* at ¶¶ 32-76.) These customers then stopped ordering these products from Superior Fibers. (*Id.* at ¶¶ 32, 41, 50, 59, 68.)

### B. Procedural Background

On April 21, 2016, Superior Fibers brought a three-count complaint against Mr. Shaffer in the Court of Common Pleas of Fairfield County, Ohio, for: (1) a injunction enjoining Mr. Shaffer from "using, copying, deleting, disseminating, or sharing the Superior [Fibers] Information," ordering him to return any such materials to Superior Fibers, and ordering him to disclose the people and entities to whom he provided the Superior Fibers Information (*id.* at 11); (2) a judgment declaring that the Superior Fibers Information is proprietary to Superior Fibers, that Shaffer had no right to take it, and requiring Shaffer to return any such information to Superior Fibers (*id.* at 11-12); and (3) damages from Defendant's breach of the confidentiality provision of the Agreement. (*id.* at 12-14.) Superior Fibers also seeks attorneys' fees and costs. (*Id.* at 11-12, 14.)

On May 27, 2016, Mr. Shaffer removed the case to federal court, answered the complaint, and moved for judgment on the pleadings. (Docs. 1-3.) This motion is fully briefed. (*See* Docs. 3, 9, 15.) On June 15, 2016, Superior Fibers moved to remand the case to state court. (Doc. 6.) On July 8, 2016, Mr. Shaffer opposed Superior Fibers' motion to remand, (Doc. 12),

5

and Superior Fibers did not file a reply brief.  Both the motion for judgment on the pleadings and the motion to remand are ripe for review.

## II.    ANALYSIS

### A.  Subject-Matter Jurisdiction

Defendant Shaffer removed Superior Fibers' lawsuit to federal court.  Plaintiff Superior Fibers seeks to remand the case back to state court, arguing that its case does not meet the jurisdictional requirements of 28 U.S.C. § 1332, because: (1) the amount in controversy does not exceed $75,000; and (2) the parties are both citizens of Ohio.[1]  Plaintiff also argues that Defendant waived its right to remove the case due to the forum-selection clause in the parties' contract, and Plaintiff seeks attorney's fees associated with his motion.  28 U.S.C. § 1447(c).  Defendant contests each of these assertions, which the Court will consider seriatim.

### 1.  Standard of Review

Under 28 U.S.C. § 1332, this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between…citizens of different states."  28 U.S.C § 1332(a)(1).  If a case initially brought in state court satisfies the requirements of § 1332(a)(1), a defendant may remove that case to federal court.  28 U.S.C. § 1441(a).  The party seeking to remove the case to federal court bears the burden to show, by a preponderance of the evidence, that this Court has subject matter jurisdiction.  *Cancino v. Yamaha Motor Corp.*, U.S.A., 494 F.Supp.2d 664, 665 (S.D. Ohio 2005) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)).  Because removing a case to federal court interferes with state court jurisdiction, federal courts must narrowly construe the removal statute.  *Conrad v. McDonald's Corp.*, No. 15-cv-

---

[1] Because the parties do not address the issue, the Court assumes, without deciding, that Plaintiff (a Delaware limited liability company registered as a foreign limited liability company to transact business in Ohio) is a citizen of the State of Ohio.

3127, 2016 WL 1638889, at *3 (S.D. Ohio 2016) (citing *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999)).

### 2. Defendant Has Met His Burden to Show the Requisite Amount in Controversy

The Court examines the amount in controversy at the time the complaint is removed to federal court. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007). A plaintiff may defeat removal to a federal court by suing for less than the jurisdictional amount, or by unequivocally stating and stipulating to limited damages. *McIntire v. Ford Motor Co.*, 142 F.Supp.2d 911, 919 (S.D. Ohio 2001) (citing *St. Paul Mercury v. Imdemn. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)) (suing for less than the jurisdictional amount); *Driscoll v. Wal-Mart Stores East, Inc.*, No. 2:09-cv-00154, 2009 WL 2169134, at *4 (S.D. Ohio July 16, 2009) (unequivocal statement/stipulation of limited damages). Where a complaint "does not facially claim damages exceeding $75,000," the Court considers "whether it is 'facially apparent' from the complaint that the damages are 'likely above' the jurisdictional amount in controversy." *Estate of Millhon v. UNUM Life Ins. Co. of America*, No. 2:08-cv-652, 2009 WL 2431252, at *2 (S.D. Ohio Aug. 5, 2009) (citation omitted). When the amount in controversy is disputed, the parties may take discovery and submit evidence on the issue. *Heartland of Portsmouth, OH, LLC v. McHugh Fuller Law Group, PLLC*, No. 1:15–cv–007, 2015 WL 728311, at *1 (S.D. Ohio Feb. 19, 2015). In deciding the question, the Court will "consider the allegations and claims asserted in the Complaint together with the parties' evidentiary submissions." *Crooks v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-cv-2234, 2015 WL 8602519, *3 (S.D. Ohio 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). The Court focuses not on "the low end of an open-ended claim, but rather…a reasonable reading of the value of the rights being litigated." *Id.* The defendant has the burden to prove amount in

controversy by a preponderance of the evidence. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

The Sixth Circuit has stated that, "[a]s a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). The contract at issue here does not provide for attorneys' fees, and neither party has directed this Court's attention to a statute that mandates or expressly allows for attorneys' fees here. Therefore, in determining the amount in controversy, this Court will consider compensatory damages but exclude attorneys' fees. *See Pollock v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-cv-0581, 2011 WL 5075815, at \*2 (S.D. Ohio, Oct. 26, 2011) (considering compensatory and punitive damages but excluding attorneys' fees in an amount in controversy calculation); *Turchan v. Equity for Life, LLC*, No. 2:07–CV–0435, 2009 WL 4547670, at \*3 (S.D. Ohio Dec. 1, 2009) (same).

Superior Fibers' complaint seeks an injunction, (*id.* at pp. 10-11), a declaratory judgment, (*id.* at pp. 11-12), and "damages in excess of $25,000."[2] (Doc. 11 at ¶ 102). This more-than-$25,000 includes, but is not limited to: "the monies spent by Superior (and that continue to be spent by Superior) to investigate Shaffer's misconduct" (*id.* at ¶ 103); "loss of property, trade secrets, intellectual property and/or proprietary information" (*id.* at ¶ 104); and attorneys' fees and court costs. (*Id.* at ¶ 105.)

---

[2] Even though requests for declaratory and injunctive relief may factor into the calculation, *see Buckeye Recyclers v. CHEP USA*, 228 F.Supp.2d 818, 821 (S.D. Ohio 2002), the parties discuss damages related to the breach of contract claim only. (Doc. 12 at 4-6; Doc. 6 at 4-6.) The Court will likewise limit its analysis. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (quotation omitted).

The complaint further alleges that AAF, which had not been able to produce "10 gram" (a Superior Fibers product) prior to Shaffer's employment with AAF, began making such 10 gram after Shaffer's start date, obviating AAF's need to buy 10 gram from Superior: "[u]pon information and belief, AAF uses about $5,000,000 of 10 gram per year.  Prior to Shaffer starting his employment position with AAF, AAF had been ordering approximately $2,000,000 worth of Superior's 10 gram per year.  Following the AAF Start Date, AAF stopped ordering any 10 gram from Superior." (Doc. 11 at ¶¶ 27-29.)  Finally, Superior Fibers alleges that, beginning with Shaffer's employment with AAF, AAF started using Superior Fibers' proprietary information to sell products that it had not previously sold to Chemco (*id.* at ¶¶ 32-40), Product Plus (*id.* at ¶¶ 41-49), Glasfloss (*id.* at ¶¶ 50-58), Clarcor (*id.* at ¶¶ 59-67), and Dafco (*id.* at ¶¶ 68-76).

In support of its motion to remand, Plaintiff focuses on its request for damages "in excess of $25,000.00." (Doc. 6 at 4-6.)  Even though Plaintiff alleged that Defendant's actions caused it to lose at least $2,000,000, Plaintiff calls Defendant's use of that number "nebulous mathematical phraseology." (*Id.* at 5.)  Plaintiff argues that its claimed "excess of $25,000" controls, because it was "made in good faith as it is consistent with awards from similar cases." (*Id.*)  These "similar cases" apparently consist of a single a jury verdict for $55,108 in a case that Plaintiff neglects to cite or attach. (*Id.*)[3]

In opposition, Defendant argues that a reasonable reading of the Complaint shows the amount in controversy to surpass the jurisdictional floor of $75,000.  Defendant also submits an affidavit including his statement: "Plaintiff alleges AAF International ("AAF") has sold products to certain other companies (Chemco, Protect Plus, Glasfloss, Clarcor, Dafco).  To the extent

---

[3] The Court's own research has unearthed jury verdicts for breach of confidentiality agreements that fall below *and* above the jurisdictional limit of this Court. *See, e.g., Litigation Mgt., Inc. v. Bourgeois,* 2011-Ohio-2794, ¶ 4, (Ohio App. 8 Dist. 2011) ($45,000, plus $4,000 per each of a number of individual defendants); RPM, Inc. v. Oatey Co., 2005-Ohio-1280, ¶ 5 (Ohio App. 9 Dist. 2005) ($210,000).

AAF has sold products to these companies, the amount of those sales exceeds $75,000." (Doc. 12-1 at ¶ 10.)

Defendant is correct that seeking "damages in excess of $25,000" does not foreclose Plaintiff from seeking damages in excess of $75,000. In fact, damages of $75,001, or even $2,000,000, comport with Plaintiff's request for "damages in excess of $25,000." *See Crooks v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-cv-2234, 2015 WL 8602519, *3 (S.D. Ohio Dec. 14, 2015) ("Plaintiff's request for amounts in excess of [the state court's] minimum jurisdictional limits…does not constitute a good-faith demand for monetary relief of a stated sum that the Court can deem the amount in controversy.")[4] In addition, seeking "damages in excess of $25,000" is not "an unequivocal statement and stipulation limiting damages" to less than $75,000. *Driscoll*, 2009 WL 2169134, at *4.

Here, a reasonable reading of the complaint shows that Plaintiff seeks to litigate rights worth more than $75,000. As discussed above, for its breach of contract claim, Plaintiff seeks damages for lost "property, trade secrets, intellectual property and/or proprietary information[,]" as well as damages associated with its investigation of Defendant's misconduct. (Doc. 11 at ¶¶ 103-104.) Plaintiff incorporates into its contract claim every preceding allegation of the complaint, which includes the following:

> 27. Upon information and belief, AAF uses about $5,000,000 of 10 gram per year.
>
> 28. Prior to Shaffer starting his employment position with AAF, AAF had been ordering approximately $2,000,000 worth of Superior's 10 gram per year.
>
> 29. Following the AAF Start Date, AAF stopped ordering any 10 gram from Superior.

---

[4] The Court notes that Ohio Rule of Civil Procedure 8(A) prevented Superior Fibers from specifying an amount of damages greater than $25,000. Ohio R. Civ. P. 8(A).

A reasonable reading of these allegations, which Plaintiff uses to support its breach of contract claim, is that Plaintiff lost at least $2,000,000 as a result of lost "property, trade secrets, intellectual property and/or proprietary information."  $2,000,000 is unquestionably more than the jurisdictional floor of $75,000.  This amount is amplified by any damages caused by AAF's allegedly improper use of Plaintiff's proprietary information to sell products to Chemco, Product Plus, Glasfloss, Clarcor, and Dafco, and any costs associated with Plaintiff's investigation of Defendant. (Doc. 11 at ¶¶ 32-76, 103.)  The Court therefore **DENIES** Plaintiff's motion to remand on the basis that the amount in controversy does not reach the jurisdictional floor of $75,000.

### 3.   Defendant Has Met His Burden to Show Diversity of Citizenship

To invoke federal jurisdiction in this case, the parties must be "citizens of different states." 28 U.S.C § 1332(a)(1).  Citizenship, for the purposes of diversity jurisdiction, means the state of domicile rather than residence. *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). A person may be domiciled in only one state at a time, but he does not lose a previous domicile until he establishes a new one. *Persinger v. Extendicare Health Services, Inc.*, 539 F. Supp. 2d 995, 996–97 (S.D. Ohio 2008) (citing *Eastman v. Univ. of Michigan,* 30 F.3d 670, 672–73 (6th Cir.1994)).  Without more, "mere absence from a fixed home, however long or continued, cannot...effect a change in domicile." *Id.* (citation omitted).  A party acquires a domicile in a particular state by being "physically present in the state and ... hav[ing] either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Id.*  To assess a party's domicile for the purposes of its diversity jurisdiction, the Court reviews "the facts as they exist at the time an action is initiated." *Pitt Exavating, LLC v. Pitt*, 603 Fed. Appx. 393, 396 (6th Cir. 2015) (quotation omitted).

This Court looks to several, non-exhaustive, factors to aid in its determination of domicile:

> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

*Persinger*, 539 F. Supp. 2d at 997 (quotation omitted).  No one factor is dispositive, and the Court assesses not only the *number* of contacts with the purported domicile, but also to "their substantive nature." *Id.*

Plaintiff cites two nonbinding cases for the proposition that Defendant's own statements of domicile "may be negated by other declarations and inconsistent acts." (*Id.* at 7.)  Plaintiff then points to a sole "inconsistent act" of Defendant owning property in Ohio yet not alleging that he owns or rents a home in Alabama.  (Doc. 6 at 8.)

In an affidavit, Defendant addresses some of the *Persinger* factors and clarifies that he rents a home in Arkansas.  (Doc. 12-1.)  According to the affidavit, Defendant moved to Arkansas in May of 2015, where he currently works, rents an apartment, and is registered to vote.  (*Id.* at ¶¶ 2-5.)  He "intend[s] to continue living in Arkansas and ha[s] no intention of leaving to reside anywhere else." (*Id.* at ¶ 6.)  He has not lived in Ohio since 2013, and resided in North Carolina between 2013 and 2015.  (*Id.* at ¶¶ 7-8.)  He does own property in Ohio, but he rents this property to his sister, her fiancé, and his mother.  (*Id.* at ¶ 9.)  He does not intend to return to live in Ohio.  (*Id.*)  Defendant's notice of removal further avers that he registered his vehicle in Arkansas.  (Doc. 1 at ¶ 5.)

Although Defendant's affidavit does not address his voting practices, financial accounts, associations, or payment of taxes, the Court finds that he has met his burden to show, by a preponderance of evidence, that he has established a domicile in Arkansas.  Defendant lives and

12

works in Arkansas, where he is registered to vote and where his vehicle is registered. He has reconciled the inconsistency highlighted by Plaintiff about whether he rents or owns a home in Arkansas. And he intends to continue living in Arkansas. The Court therefore **DENIES** Plaintiff's motion to remand on the basis that the parties are nondiverse.

### 4. The Agreement's Forum-Selection Clause Does Not Waive Defendant's Statutory Right to Remove the Case to Federal Court

Under 28 U.S.C. § 1441 (the "removal statute"), a defendant may remove certain civil actions—in this case, civil actions between diverse parties for an amount greater than $75,000— to federal court. 28 U.S.C. § 1441. Although defendants may waive their statutory right to remove cases to federal court, the Sixth Circuit has required such waiver to be "clear and unequivocal." *Regis Associates v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990). According to the Sixth Circuit, "[a] clause that does not even mention either removal or the party seeking to remove cannot be a clear waiver of removal." *Cadle Co. v. Reiner, Reiner & Bendett, P.C.*, 307 Fed. Appx. 884, 887–88 (6th Cir. 2009) (quotation omitted).

The Agreement at issue in this case contains a forum selection clause that provides that "[a]ny disputes or claims arising out of or relating to this Agreement may only be heard, adjudicated and determined in an action or proceeding filed in a federal or state court for or covering Fairfield County, Ohio, and each of the parties consents to the jurisdiction of any such court." (Agmt. ¶ 5.8, Doc. 11 at 18.) The District Court for the Southern District of Ohio covers Fairfield County, Ohio. *About the Court*, United States District Court Southern District of Ohio, available at http://www.ohsd.uscourts.gov/about-court.

The forum-selection clause contained in the Agreement does not waive Defendant's statutory right to remove the case to the federal court. Although Plaintiff is correct that Defendant "consent[ed] to the jurisdiction" of the Court of Common Pleas in Fairfield County,

13

Ohio, (Doc. 6 at 10), Plaintiff neglects to mention that, by the same forum-selection clause, Plaintiff *also* consented to the jurisdiction of a "federal…court covering Fairfield County, Ohio[.]" (Agmt. ¶ 5.8.)  This is because "*each* of the parties consents to the jurisdiction of *any* such [federal or state court for or covering Fairfield County, Ohio]." *Id.* (emphasis added).

Moreover, because the clause mentions neither removal nor the party potentially seeking to remove, this forum-selection clause does not rise to the level of clearly and unequivocally waiving Defendant's right to remove.  Indeed, the Sixth Circuit has found forum-selection clauses choosing *only* state court to be insufficient to waive a defendant's right to remove.  *See, e.g.*, *Cadle*, 307 Fed. Appx. at 885 ("All disputes as to any amounts charged or services rendered, or as to these Terms of Representation shall be resolved in the Newton Falls, Ohio Municipal Court or the Trumbull County, Ohio Common Pleas Court, depending on the amount in controversy[.]"); *EBI-Detroit, Inc. v. City of Detroit,* 279 Fed. Appx. 340, 346-47 (6th Cir. 2008) ("The Contractor [the plaintiff] agrees to submit to the exclusive personal jurisdiction of, and not commence any action in other than, a competent State court in Michigan, regardless of residence or domicile, for any action or suit in law or equity arising out of or under the Contract Documents.").

In sum, the Court finds that Defendant has met his burden to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 and the parties are diverse.  The Court also finds that the Agreement's forum-selection clause does not clearly and unequivocally waive Defendant's right to remove the case to federal court.  Therefore, Plaintiff's motion to remand this case to state court is **DENIED**.  Because the Court denies Plaintiff's motion, the Court also **DENIES** Plaintiff's request for attorney's fees under 28 U.S.C. § 1447(c).

## B. Motion for Judgment on the Pleadings

Defendant moves for judgment on the pleadings, seeking to dismiss the complaint because: (1) the complaint fails to allege properly the breach of the parties' noncompete agreement; and (2) Plaintiff's allegations are speculative and conclusory. Plaintiff responds that the complaint properly alleges a breach of a *confidentiality*, as opposed to a noncompete, agreement, and it meets the notice-pleading standard set by Federal Rule of Civil Procedure 8(a). The Court will address these issues in turn.

### 1. Standard of Review

The Court evaluates a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) in the same manner as it reviews a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pled factual allegations as true[.]" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v.*

15

*Pardus*, 551 U.S. 89, 93 (2007)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Id.* (citing *Twombly*, 550 U.S. at 555).

### 2. The Agreement States a Claim for the Breach of a Confidentiality Clause

Defendant asks the Court to dismiss Plaintiff's complaint because Plaintiff does not allege factors necessary for the Court to find a noncompete agreement to be enforceable. (Doc. 3 at 9-10; Doc. 15 at 2.) He also alludes to elements of a state law claim for misappropriation of trade secrets. (Doc. 3 at 10.) Defendant argues further that he has met the conditions of the noncompete agreement because he did not begin working for AAF until after 12 months following his employment with Plaintiff. (*Id.* at 10-11.)

For a noncompete agreement to be enforceable, its restrictions must be reasonable. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App. 3d 260, 266 (Ohio App. Ct. 1st Dist. 2000). In other words, they: (1) must be no greater than necessary to protect the legitimate business interests of Superior Fibers; (2) may not impose undue hardship on Shaffer; and (3) may not be injurious to the public. *Id.*

Defendant's argument misses the mark. Plaintiff sued to enforce its contractual rights under the Agreement's confidentiality provisions. Plaintiff did not bring a claim under an Ohio statute, like Section 1333.81 of Ohio Trade Practices law, and Defendant does not suggest that such a statute preempts Plaintiff's contract claim. As Plaintiff correctly notes, a claim for breach

16

of contract in Ohio requires Plaintiff to plead, only, "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quotation omitted).

Defendant marries the Agreement's confidentiality and noncompete provisions, insisting that "[t]he subject agreement is clearly a non-compete agreement, which, like most such non-compete agreements, contains confidentiality provisions." (Doc. 15 at 2.)  These are separate claims, however, and Plaintiff does not argue that Defendant should be enjoined from *employment* with a competitor, which would implicate the Agreement's noncompete provision. (Doc. 9 at 12.)   As such, the balancing test for the enforceability of a noncompete provision is irrelevant, because it balances the need for an employer to maintain its trade secrets with an employee's ability to be employed *at all*.  Defendant does not cite a case that allows Defendant to share Plaintiff's trade secrets and proprietary information with his new employer; in fact, quite the contrary.  (*See, e.g.*, Doc. 3 at 10, quoting *Hydrofarm v. Orendorff*, 180 Ohio App. 3d 339, 345 (Ohio 10th Dist. 2008) (a former employee may "take employment in a competitive business, and…use his knowledge (other than trade secrets) and experience…"))

Mr. Shaffer cites cases that do not help him.  Although *Brentliner Enterprises v. Curran* is somewhat inapposite because it deals with an appeal from a final judgment, *Brentliner* distinguishes between a noncompete agreement and a confidentiality agreement.  141 Ohio App. 3d 640, 643, 645 (Ohio App. 10th Dist. 2001).  In *Brentliner*, a former employer sued a former employee for an injunction prohibiting the former employee from: (1) disclosing confidential information learned during his employment in breach of his employment agreement's confidentiality clause; and (2) working for a competitor in breach of his employment agreement's noncompete clause.  *Id.* at 645.  The trial court granted the injunction with respect to

17

the confidentiality clause but, based on the balancing test Shaffer highlights, denied the injunction with respect to the noncompete clause. *Id.* The appellate court used the same balancing test to affirm the trial court's order on the noncompete clause. If the balancing test applied to the confidentiality clause as well, the *Brentliner* court would likely not have granted either injunction.

In *Procter & Gamble Co. v. Stoneham*, the defendant former employee signed a confidentiality agreement "agree[ing] not to disclose any of P&G's confidential information or trade secrets." 140 Ohio App. 3d 260, 266 (Ohio App. Ct. 1st Dist. 2000). Years later, in order to receive valuable stock options, he signed a noncompetition agreement, agreeing "not to compete with P&G for three years after the termination of his employment." *Id.* Procter & Gamble sued to keep him from working for a competitor, not under the confidentiality agreement, but under an Ohio statute and the noncompete agreement. *Id.* at 264. *Jacono v. Invacare Corporation* also deals with a noncompete provision (not a confidentiality provision), but this time in the context of an appeal from the denial of a motion for preliminary injunction. No. 86605, 2006-Ohio-1596, ¶¶ 4, 7 (8th Dist. App. Mar. 30, 2006).

The cases cited by Defendant make clear that plaintiffs seeking to enforce noncompete agreements must meet the balancing test laid out above. They do not, however, establish the same of plaintiffs seeking to enforce confidentiality agreements. Therefore, the Court **DENIES** Defendant's motion for judgment on the pleadings on the grounds that Plaintiff has failed to establish the factors necessary to show the enforceability of a noncompete agreement.

Defendant's argument that he is permitted to compete with Plaintiff twelve months after his employment there, is misplaced. Unlike the noncompete clause of the Agreement, the

confidentiality provision limits Mr. Shaffer's use of Superior Fibers' proprietary information "at any time during or after his employment." (Agmt. ¶ 3.1.)

### 3. The Complaint Satisfies Notice Pleading

As stated above, Plaintiff brings a case for breach of contract, for which Plaintiff must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Savedoff*, 524 F.3d at 762. Mr. Shaffer argues that Superior Fibers has failed to plead breach of contract with the specificity required by *Twombly* and *Iqbal*, which require Plaintiff to state facts that allow the Court to make the reasonable inference that Mr. Shaffer is liable for breach of the confidentiality clause of the Agreement. (Doc. 3 at 7-9; Doc. 15 at 1, 3-4.) In so arguing, Mr. Shaffer criticizes Plaintiff's use of allegations "upon information and belief," and attacks his lack of allegations "demonstrating how or why its production of '10 gram' [or the products for five other Superior customers] involves any proprietary or confidential information." (Doc. 3 at 7.)

Plaintiff responds, incorrectly, that its complaint need not meet the pleading standard of *Twombly* and *Iqbal* because those cases dealt with federal statutes with pleading requirements that exceeded the notice pleading standard applicable to an Ohio breach of contract action. (Doc. 9 at 10-11.) Plaintiff's argument is without merit. Regardless of whether Plaintiff's claims are based on state or federal law, once removed to federal court, they are subject to federal pleading requirements. *McDaniel v. PNC Bank*, No. 2:11–CV–0683, 2012 WL 368066, *2 (S.D. Ohio Feb. 3, 2012) (citing *Wilkey v. Hull*, 366 Fed. Appx. 634, 637 (6th Cir. 2010)). And to plead adequately a claim in federal court, Plaintiff must meet the plausibility requirements of *Twombly* and *Iqbal*. *Id.* *Twombly* and *Iqbal*, however, do not preclude Plaintiff from pleading allegations "on information and belief." *Cassidy v. Teaching Co., LLC*, No. 2:13-cv-884, 2014 WL

1599518, at *3-*4 (S.D. Ohio Apr. 21, 2014). This is especially true if "the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* (quotation omitted).

Defendant attacks two "information and belief" allegations. First, that, "'upon information and belief' AAF never sold [10 gram and the other Superior Fibers products] before Mr. Shaffer was an AAF employee but now is doing so; and 'upon information and belief' AAF is only able to manufacture the product because Mr. Shaffer purportedly shared confidential information with AAF." (Doc. 3 at 8-9.) The facts underlying both of these allegations are within the control of AAF, and, likely, Defendant. Plaintiff has no way to know, without discovery, to whom its competitor sold products, how, and when. Therefore, its "on information and belief" allegations are appropriate here.

Moreover, these allegations are based on factual information that makes the inference of culpability plausible. According to the complaint, Defendant worked at Superior Fibers for several years. During this time, Plaintiff alleges, Defendant learned about the "design, manufacturing and production requirements" for 10 gram, the production of which utilized Superior Fibers' confidential information. (Doc. 11 at ¶¶ 23-24.) Similarly, Mr. Shaffer was privy to confidential information that Superior Fibers used to make products for Chemco, Protect plus, Glasfloss, Clarcor, and Dafco. (*Id.* at ¶¶ 36, 45, 54, 63, 72.) AAF could not produce 10 gram before employing Defendant. (*Id.* at ¶ 25.) Superior Fibers knows this in part because AAF had been ordering $2,000,000 of 10 gram from Superior prior to Defendant's employment with AAF. (*Id.* at ¶ 28.) Curiously, once Mr. Shaffer began working for AAF, AAF stopped ordering any 10 gram from Superior. (*Id.* at ¶ 29.) And around the same time, Chemco, Protect plus, Glasfloss, Clarcor, and Dafco also stopped buying products from Superior Fibers. (*Id.* at

¶¶ 32-76.) Superior Fibers had tried to initiate discussions with AAF about Mr. Shaffer's confidentiality agreement, but AAF ducked Superior Fibers' calls. (*Id.* at ¶¶ 18-22.) From these well-pled allegations, Superior Fibers alleges, on information and belief, that Mr. Shaffer took files containing its confidential information with him when he quit, gave them to AAF, and enabled AAF to make and sell 10 gram and the Chemco, Protect plus, Glasfloss, Clarcor, and Dafco products. (*Id.* at ¶ 32-76, 84.)

Defendant also argues that Plaintiff has not detailed the proprietary and confidential nature of Superior's own products. (Doc. 3 at 8.) Defendant has not pointed the Court to any case that requires this specific information to survive a motion to dismiss a claim for the breach of a confidentiality agreement. Plaintiff has alleged what it must: that Defendant signed a confidentiality agreement with Plaintiff; that Defendant breached that confidentiality agreement by giving proprietary information to AAF; and that the resulting loss in customers caused harm to Plaintiff.

Taken in the light most favorable to the Plaintiff, these allegations, and inferences drawn therefrom, are sufficient to survive Defendant's motion for judgment on the pleadings, because it does not "appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mayer*, 988 F.2d at 638.

Defendant's motion for judgment on the pleadings is **DENIED**.

### III.    CONCLUSION

For the reasons stated above, Plaintiff's motion to remand this case to state court and for attorney's fees under 28 U.S.C. § 1447(c), (Doc. 6), is **DENIED**.  Defendant's motion for judgment on the pleadings, (Doc. 3), is also **DENIED**.

**IT IS SO ORDERED.**

                    ___s/ Algenon L. Marbley_____
                    **ALGENON L. MARBLEY**
                    **UNITED STATES DISTRICT JUDGE**

**DATED:  December 28, 2016**